UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Muhammed Murphy,

                Plaintiff,    Case No. 20-cv-10022

v.                                  Judith E. Levy
                                     United States District Judge

Jodi DeAngelo,[1]

                                     Mag. Judge David R. Grand

                Defendant.

_____/

## **OPINION AND ORDER OF DISMISSAL**

Before the Court is Plaintiff Muhammed Murphy's *pro se* civil rights complaint filed under 42 U.S.C. § 1983. (ECF No. 1.) Murphy is a Michigan state prisoner proceeding without prepayment of the filing fee pursuant to 28 U.S.C. § 1915(a)(1). (ECF No. 4.) Defendants, who are being sued in their personal and official capacities, are Jodi DeAngelo, Warden of Woodland Center Correctional Facility (WCC); Sonal Patel, Deputy Warden of WCC; T. Lengyel, "the Captain responsible for all custody operations of [WCC]"; and Mara Trefry, Mental Health Unit

---

[1] Jodi DeAngelo is the only Defendant whose name appears on the docket. However, Murphy names three additional Defendants in the complaint, as noted below.

Chief of WCC. (ECF No. 1, PageID.3–4, 8–9.) Murphy alleges violations of the Eighth Amendment and the Fourteenth Amendment's Due Process Clause, and he seeks declaratory, injunctive, and monetary relief. (*Id.* at PageID. 4–5, 9–10, 13.) For the reasons set forth below, the Court dismisses this case because Murphy fails to state a claim upon which relief may be granted.

## I.  Background

Murphy is presently incarcerated at the Macomb Correctional Facility, but his allegations arise from a misconduct ticket he received at the Richard Handlon Correctional Facility (MTU) and from his related placement on "therapy only" status at WCC.

In November 2018, Murphy was housed at MTU. (*See id.* at PageID.4–5.) On November 21, 2018, Murphy was charged with a "Class I non-bond misconduct for fighting and staff assault," was "placed on non-bond status," and was "taken to temporary segregation, pending a hearing." (*Id.* at PageID.5.) On November 25, 2018, he was placed on suicide watch. (*Id.*) On November 27, 2018, a sergeant reviewed the misconduct, and Murphy was brought before a hearing investigator. (*Id.*) Murphy stated that he was unable to prepare for the hearing because he

2

did not have access to his eyeglasses, the Michigan Department of Corrections (MDOC) policy directives, or a hearings handbook while in temporary segregation and on suicide observation status. (*Id.*)

On December 3, 2018, corrections officers informed Murphy that he was going to be transferred to WCC[2] that afternoon. (*Id.*) Before his transfer, Murphy appeared before a hearing officer "who reviewed the charges and attempted to conduct a misconduct hearing." (*Id.*) Murphy indicated that he needed additional time to prepare for the hearing and "agreed to waive his time limits, so th[e] hearing officer agreed to reschedule the hearing." (*Id.*) The hearing officer told Murphy that he could be heard at WCC or when he returned to MTU. (*Id.* at PageID.6.) Murphy stated that "he has a significant mental health history" and is unlikely to return to MTU "any time soon." (*Id.*) The hearing officer informed Murphy that WCC does not hear "major misconducts" and that his hearing would be conducted by December 13, 2018. (*Id.*)

Murphy was transferred to WCC on December 3, 2018. (*Id.*) He was

---

[2] WCC, located in Whitmore Lake, Michigan, houses the MDOC's Inpatient Mental Health and Crisis Stabilization Program. *See* Mich. Dep't of Corr., Woodland Center Correctional Facility (WCC), https://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-215183--,00.html (last visited Jan. 28, 2021).

3

"placed on suicide precaution and observation status" and also on "confinement status known as 'therapy only.'" (*Id.*) According to Murphy,

> [w]hile on "therapy only" prisoners are not allowed to leave their cell with the exception of participating in mental health treatment. Prisoners must eat in their cell, shower only at predetermined times and are not allowed to have certain property. "Therapy only" is comparable in terms of confinement, to administrative segregation or detention status. This status only exists at WCC and is not governed by any MDOC Policy or Procedure.

(*Id.*) Murphy states that "the WCC administration . . . utiliz[es] 'Therapy Only' status for prisoners who receive class I misconducts and prisoners whom are deemed to be behavior problems." (*Id.* at PageID.8.)

On December 6, 2018, Murphy was removed from suicide watch. (*Id.* at PageID.6.) On December 12, 2018, Murphy discussed his "therapy only" status with a prison counselor, who "informed Plaintiff that she was under orders from the Warden [DeAngelo] to place all prisoners who transfer to WCC with pending tickets on the 'therapy only' status." (*Id.*)

Murphy then filed a grievance challenging his "therapy only" status. (*See id.* at PageID.6, 18.) Murphy states that Lengyel "was assigned to review the grievance" with him and informed Murphy "that being on 'therapy only' was 'beyond his control' and it [sic] was nothing

4

he could do about it." (*Id.* at PageID.6–7.) In December 2018, Lengyel and Patel signed a Step I Grievance Response denying Murphy's grievance as follows:

> By definition of policy 03.03.105, Prisoner Discipline, you received a misconduct that placed you on a non-bond status prior to your transfer to WCC. You will remain on this status at WCC until you are discharged from an inpatient setting. You will be constantly assessed and reviewed by your assigned treatment team at WCC. This grievance is denied. . . .

(*Id.* at PageID.7, 18.)

Murphy filed a step II grievance appeal, which was reviewed by DeAngelo. (*See id.* at PageID.7, 17.) In her Step II Appeal Response signed on January 11, 2019, DeAngelo concluded that "[t]he Step I grievance response appropriately addressed the grievance concern and is upheld at Step II." (*Id.* at PageID.17.) DeAngelo provided the following summary of her step II investigation:

> Reviewed step I response.
>
> Prisoner did not provide additional documentation, information, or evidence to support his appeal. Step I response was investigated as outlined in PD 03.02.130, Prisoner/Parolee Grievances.
>
> Prisoner received a non-bond misconduct prior to WCC. Prisoner did have a hearing on the misconduct on 12/3/2018

5

> but the hearing officer delayed the hearing until prisoner got released from observation status.
>
> When prisoner is found competent for hearing by his treatment team, a hearing will be scheduled for the misconduct to be heard.
>
> Prisoner still has access to his treatment and receives therapy.

(*Id.*)

Murphy subsequently filed a step III grievance appeal. (*See id.* at PageID.7.) It was denied by the Manager of the Grievance Section of the MDOC's Office of Legal Affairs on February 13, 2019, based on a determination that Murphy's "issue was in fact considered, investigated, and a proper decision was rendered." (*Id.* at PageID.16.) Murphy states that on January 14, 2019—between his step II and step III grievance appeals—a hearing officer e-mailed DeAngelo two questions from Murphy about his "therapy only" status and due process rights, to which DeAngelo responded that "his status . . . is consistent with MDOC policy." (*Id.* at PageID.7–8.)

In the complaint dated December 23, 2019, Murphy alleges that "therapy only" status is not governed by "any known or authorized Michigan Department of Corrections Policy Directive" or procedure (*id.*

6

at PageID.6, 8), has no "basis of authority in . . . [the] Directors office memorandum" (*id.* at PageID.12), and is exclusive to WCC. (*Id.* at PageID.6.) He further alleges that "[t]he administration and officials at WCC have instituted and continue to use a practice that has no written or tangible authority," that "[t]here are no written procedural requirements for placement on 'therapy only' status like there are for other types of confinement within the MDOC," and that "[t]here is no policy or written authority for prisoners to challenge the imposition" of this status. (*Id.* at PageID.10–11.) Murphy states that "as applied by the WCC administration [the status] becomes equivalent to temporary segregation, administrative segregation and/or sanction, depending on the circumstances under which it is applied." (*Id.* at PageID.10.)

Murphy seeks to hold Defendants liable because they "knowingly participated in the unlawful and excessive use of 'therapy only'" and denied him his due process rights. (*Id.* at PageID.12.) Murphy alleges that DeAngelo "arbitrarily created 'therapy only' status and instituted the practice [of] placing prisoners on 'therapy only' for pending misconducts, behavioral issues and essentially for whatever reason is deemed necessary. Warden DeAngelo directs the administration at WCC

7

to use the unauthorized and unlawful 'therapy only' status." (*Id.* at PageID.8.) Murphy alleges that Patel "upheld and continued the unlawful practice" regarding "therapy only" status in reviewing his grievance. (*Id.*) Murphy alleges that Lengyel "was made aware of the unlawful use of 'therapy only' and did not stop the unlawful practice." (*Id.*) Finally, Murphy alleges that Trefry is "responsible [for] approving treatment plans that call for 'therapy only' status" and "has knowingly authorized the unlawful use of 'therapy only' status by approving mental health management plans that call for it." (*Id.* at PageID.9.)

## II. Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2)–(3). The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal citation omitted). Rule 8's pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

8

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Moreover, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court must dismiss a prisoner action brought under federal law if the complaint is frivolous or fails to state a claim upon which relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see also* 42 U.S.C. § 1997e(c). "A complaint can be frivolous either factually or legally." *Anson v. Corr. Corp. of Am.*, 529 F. App'x 558, 559 (6th Cir. 2013) (citing *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010)). The former is "when [the complaint] relies on 'fantastic or delusional' allegations"; the latter is "when 'indisputably meritless' legal theories underlie the complaint." *Brand v. Motley*, 526 F.3d 921, 923 (6th Cir. 2008) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989)).

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the federal Constitution or laws and must show that the violation was committed by a person acting

9

under color of state law." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). *Pro se* civil rights complaints are construed liberally. *See Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010) (citing *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985)).

### III. Analysis

Murphy alleges that his placement on "therapy only" status violated the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's Due Process Clause. Specifically, he claims that "Defendants violated [his] Eighth Amendment right to be free of cruel and unusual punishment by[] unlawfully confining the plaintiff, failing to follow clearly defined MDOC policy, denying the plaintiff due process, as it relates to segregated confinement." (ECF No. 1, PageID.4–5.) He also claims that "[a]ll Defendants . . . are complicit and culpable in the denial of the plaintiff's due process rights." (*Id.* at PageID.12.)

#### A. Eighth Amendment: Cruel and Unusual Punishment

Murphy alleges that Defendants violated the Eighth Amendment by placing him on "therapy only" status, which he states is comparable to

administrative segregation. (*See id.* at PageID.4–5, 10–11.) "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1093–94 (6th Cir. 2019) (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). "The Supreme Court has explained that '[a]mong unnecessary and wanton inflictions of pain are those that are totally without penological justification.'" *Id.* at 1094 (some internal quotation marks omitted) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

"[T]o state a claim that prison conditions violate the Eighth Amendment, the prisoner must plead facts showing that he has been subjected to deprivations so serious that he was deprived of the 'minimal civilized measure of life's necessities' and that prison officials acted wantonly, with deliberate indifference to his serious needs." *Powell v. Washington*, 720 F. App'x 222, 227–28 (6th Cir. 2017) (quoting *Richmond v. Settles*, 450 F. App'x 448, 454–55 (6th Cir. 2011)). The Sixth Circuit has "found the minimal civilized measure of life's necessities to include food, clothing, shelter, medical treatment, and reasonable safety." *Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011) (internal citation

11

omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Richmond*, 450 F. App'x at 455 (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)). A prisoner "must allege 'extreme deprivations' to state an Eighth Amendment conditions-of-confinement claim," and "[a]llegations of temporary inconveniences are insufficient." *Powell*, 720 F. App'x 228 (internal citations omitted).

Murphy fails to state an Eighth Amendment claim because he does not allege that he was denied his basic human needs when he was on "therapy only" status. Nor does he allege that Defendants were deliberately indifferent. Murphy states in the complaint that certain restrictions are imposed on prisoners on "therapy only" status, but these restrictions do not deprive them of food, clothing, shelter, medical treatment, or reasonable safety. (*See* ECF No. 1, PageID.6.) DeAngelo's Step II Appeal Response indicates that while on "therapy only" status Murphy "still has access to his treatment and receives therapy." (*Id.* at PageID.17.) Murphy states that "therapy only" status is akin to administrative segregation (*id.* at PageID.10–11), but "[b]ecause

12

placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. Dec. 8, 2003)). In sum, Murphy does not allege "extreme deprivations" that rise to the level of cruel and unusual punishment. Accordingly, he fails to state a claim under the Eighth Amendment.

### B. Fourteenth Amendment: Due Process

Murphy also alleges that Defendants' actions regarding his "therapy only" status violated his due process rights under the Fourteenth Amendment. (*See* ECF No. 1, PageID.9–12.) "The Due Process Clause of the Fourteenth Amendment 'protects persons against deprivations of life, liberty, or property.'" *Evans*, 427 F. App'x at 442 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "An inmate establishes a liberty interest when a change in conditions of confinement 'imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Williams v. Lindamood*, 526 F. App'x 559, 562 (6th Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484

13

(1995)). "The court should consider the nature of the confinement and its duration in determining whether it imposes an atypical and significant hardship." *Powell*, 720 F. App'x at 226 (quoting *Harden-Bey*, 524 F.3d at 793). If an inmate shows a liberty interest, "the due process claim 'is not complete unless and until the State fails to provide due process.'" *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)).

"Simply disagreeing with being placed in administrative segregation does not make it 'atypical and significant.'" *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (citing *Harden-Bey*, 524 F.3d at 796). The Sixth Circuit has held that a prisoner has "presented a § 1983 claim alleging that placement in administrative segregation is 'atypical and significant in relation to the ordinary incidents of prison life' in extreme circumstances, such as when the prisoner's complaint alleged that he is subject to *indefinite* administrative segregation." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (emphasis in original) (citing *Harden-Bey*, 524 F.3d at 795). In *Joseph v. Curtin*, the court of appeals determined that the plaintiff "failed to state a cognizable due-process claim" regarding his "61-day stay in administrative segregation" because

14

there was "nothing in [his] complaint that suggests there was anything 'atypical and significant' about [it]." *Id. But see Harris*, 465 F. App'x at 484 (concluding that eight years in administrative segregation is an "atypical duration [that] created a liberty interest that triggered [the plaintiff's] right to due process"); *see Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (holding that the plaintiff's thirteen-year confinement to administrative segregation without meaningful review "gives rise to a liberty interest").

A prisoner in administrative segregation for over one year does not experience an "atypical and significant hardship" if the segregation is justified. In *Jones v. Baker*, the plaintiff spent two-and-one-half years in administrative segregation while his involvement in violent activity at the prison was investigated. *Jones*, 155 F.3d at 812. The Sixth Circuit noted that the "length of time that [the] plaintiff has been in segregation may be atypical" but found that there was no "'atypical or significant' hardship" based on the facts of the case and because there were "extraordinarily good reasons for holding [him] in segregation." *Id.* at 812–13. The court explained that the amount of time the plaintiff spent in segregation "was justified and does not lead to the conclusion that [he]

15

suffered an 'atypical and significant' hardship in relation to the ordinary incidents of prison life" because "[w]hen a prisoner is implicated in the killing of a prison guard during a large prison riot, it is not unreasonable for corrections officials to make some adjustment in the conditions of his or her imprisonment until a full and thorough investigation is completed." *Id. See also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (concluding that the plaintiff spending one year in administrative segregation, including 117 days after the recommendation to reclassify him was approved, "did not impose an atypical or significant hardship" because "[t]he delay in transferring [him] was understandable given the corrections system's need to find him a bed at a suitable security level institution in an overcrowded prison system, with many prisoners needing the same type of transfer").

Here, Murphy fails to state a Fourteenth Amendment due process claim because he fails to allege that his "therapy only" status imposed an "atypical and significant hardship" and therefore implicates a liberty interest. To the extent "therapy only" status is a form of administrative segregation, as Murphy contends (*see* ECF No. 1, PageID.6, 10), "[p]lacement in administrative segregation does not give rise to a

16

protected liberty interest because it does not constitute an atypical and significant hardship on the inmate." *Bennett v. Smith*, 110 F. App'x 633, 634–35 (6th Cir. 2004) (citing *Sandin*, 515 U.S. at 484; *Mackey*, 111 F.3d at 463).

Regarding the nature of his confinement on "therapy only" status, Murphy's allegations make no distinction between the conditions of his confinement and those of other prisoners on "therapy only" status or in administrative segregation. *See Jones*, 155 F.3d at 813 (concluding that the conditions of the plaintiff's confinement "do not rise to an 'atypical and significant' hardship" because his "stays in administrative segregation and security control were not much different than that experienced by other inmates in segregation"). In addition, Murphy does not allege that his confinement conditions differed in any way from those of other inmates transferred to WCC with a pending misconduct ticket. *See Mosley v. Batts*, No. 19-5355, 2019 WL 8399882, at *2 (6th Cir. Nov. 19, 2019) ("Because [the plaintiff] failed to allege how '[t]he regime to which he was subjected' differed from 'the range of confinement to be normally expected' for a comparable inmate, *Sandin*, 515 U.S. at 486, 487, his complaint failed to state a due-process claim.").

17

Murphy makes no allegations regarding the total duration of his confinement on "therapy only" status. Based on the information in the complaint, he could have spent, at most, a little over one year on "therapy only" status at WCC.[3] Murphy was assigned this status because he arrived at WCC with a pending misconduct charge for "fighting and staff assault." (ECF No. 1, PageID.5–6.) "It is not 'atypical' for a prisoner to be in segregation while his . . . participation in violent conduct inside the prison walls is investigated." *Jones*, 155 F.3d at 812. Further, "[a] prisoner who has assaulted prison staff presents an obvious security risk, and courts are loathe to second-guess prison authorities' decisions concerning such matters." *Williams v. Vidor*, 67 F. App'x 857, 859–60 (6th Cir. 2003) (citing *Block v. Rutherford*, 468 U.S. 576, 588 (1984)). In this case, it was not unreasonable for Defendants to perceive Murphy as a

---

[3] Murphy's "therapy only" status commenced when he was transferred to WCC on December 3, 2018. (*See* ECF No. 1, PageID.6.) Because "therapy only" status is, according to Murphy, unique to WCC (*see id.*), his transfer from WCC presumably ended his "therapy only" placement. Murphy does not specify when he was transferred from WCC, but on the date he signed the complaint, December 23, 2019, he was incarcerated at the Macomb Correctional Facility. (*See id.* at PageID.1–2, 14.) Applying these dates, Murphy could have been on "therapy only" status at WCC for, at most, one year and twenty days. The Court notes that even if Murphy's transfer from WCC did not terminate his "therapy only" status, the complaint's allegations challenging this status relate exclusively to WCC.

security risk due to his pending misconduct charge and to modify the conditions of his confinement by placing him on "therapy only" status until a hearing occurred.[4] In sum, Murphy does not allege that his "therapy only" status imposed an "atypical and significant hardship" and therefore deprived him of a liberty interest. Accordingly, Murphy fails to state a due process claim under the Fourteenth Amendment.

## IV. Conclusion

For the reasons set forth above, Murphy's complaint fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983. Accordingly, IT IS ORDERED that this action is DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997(e)(c). IT IS FURTHER ORDERED that an appeal from this order cannot be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

---

[4] On two occasions prior to his transfer to WCC, Murphy appeared before a hearing officer for a hearing related to the November 2018 misconduct charge; however, both times Murphy indicated that he was not prepared to proceed. (*See* ECF No. 1, PageID.5–6.) The second hearing officer informed Murphy that a hearing would take place by December 13, 2018 (*see id.* at PageID.6), and DeAngelo wrote in her response to Murphy's step II grievance appeal that "[w]hen [Murphy] is found competent for hearing by his treatment team, a hearing will be scheduled for the misconduct to be heard." (*Id.* at PageID.17.) Murphy does not indicate in the complaint whether a misconduct hearing occurred, but he makes no allegations regarding Defendants' failure to conduct such a hearing.

19

IT IS SO ORDERED.

Dated: January 29, 2021      s/Judith E. Levy
Ann Arbor, Michigan      JUDITH E. LEVY
     United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 29, 2021.

     s/William Barkholz
     WILLIAM BARKHOLZ

20